# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETWORK MONITORING LLC, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| MOMONDO A/S, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Network Monitoring LLC ("Network Monitoring" or "Plaintiff"), for its Complaint against Defendant Momondo A/S ("Momondo" or "Defendant"), alleges as follows:

## THE PARTIES

1. Network Monitoring is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 100 West Houston Street, Marshall, Texas 75670.

2. Upon information and belief, Momondo is a corporation organized and existing under the laws of Denmark, with its principal place of business located at Løvstræde 1, DK-1152 Copenhagen K, Denmark. Defendant may be served with process pursuant to the provisions of the Hague Convention. Defendant may also be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701 as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute.

3. Defendant is a leading provider of online metasearch services for hotels and lodging throughout the United States. Upon information and belief, Defendant does business in Texas and in the Eastern District of Texas directly and through intermediaries.

## JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant. Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

6. Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

7. For example, Defendant has done and continues to do business in Texas; Defendant has committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas, and/or importing Accused Products into Texas, including by providing infringing services over the internet, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein; and Defendant regularly places its products and services within the stream of commerce—directly, through subsidiaries, or through third parties—

with the expectation and knowledge that such products, such as its websites, will be used in Texas and elsewhere in the United States. Accordingly, Defendant has established minimum contacts within Texas and purposefully availed itself of the benefits of Texas, and the exercise of personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

8. For example, Defendant's website at www.Momondo.com is available to users in the United States and provides accused search and comparison services to users in the United States.

[1]

9. For example, Defendant refers to a United States version of its website offered to customers in the United States. The Momondo United States website version provides search services specific to United States users, includes terms of service and a privacy policy specific to United States users. The Momondo United States website version is identified by an American flag emblem.

---

[1] https://www.Momondo.com/



10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant does not reside in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

## PATENTS-IN-SUIT AND FACTUAL ALLEGATIONS

11. On June 16, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,058,416 (the "'416 Patent") entitled "System and Method for Detecting and Reporting Online Activity using Real-Time Content-Based Network Monitoring." A true and correct copy of the '416 Patent is available at http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&p=1&u=%2Fnetahtml%2FPTO%2Fsearch-bool.html&r=1&f=G&l=50&co1=AND&d=PTXT&s1=9,058,416.PN.&OS=PN/9,058,416&RS=PN/9,058,416.

12. On June 13, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,680,946 (the "'946 Patent") entitled "System and Method for Detecting

---

[2] *Id.*

and Reporting Online Activity using Real-Time Content-Based Network Monitoring"  A true and correct copy of the '946 Patent is available at http://patft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&p=1&u=%2Fnetahtml%2FPTO%2Fsearch-bool.html&r=1&f=G&l=50&co1=AND&d=PTXT&s1=9,680,946.PN.&OS=PN/9,680,946&RS=PN/9,680,946.

13. Plaintiff is the sole and exclusive owner of all right, title and interest to and in the '416 Patent and '946 Patent (together, the "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including the filing of this patent infringement lawsuit.  Plaintiff also has the right to recover all damages for past, present, and future infringement of the Asserted Patents and to seek injunctive relief as appropriate under the law.

14. The inventions covered by the Asserted Patents were invented by Mr. Patrick Angeles.  The Asserted Patents generally cover systems and methods that report online activity over public or private networks, such as the Internet, and more particularly to a system and method for capturing information from client-server transmissions over a plurality of clients and one or more plurality of servers and detecting and reporting the occurrence of an event or transaction along with its associated attributes using real-time content-based data analysis and attribute extraction.

15. In one exemplary embodiment of the invention, an event tracking system ("ETS") tracks and reports a user's online activity across a number of clients and servers that employ a content-based event detection and data extraction mechanism to accurately detect events and extract related data from both static and dynamically generated pages. An embodiment of the system and method of the present invention makes use of a URL proxy agent to capture HTTP

transmission records between a client and server for the purpose of reporting online activity.  The URL-proxy works by rewriting URLs such that the original URL is encoded as part of the path of the proxy URL.  The rewritten URL causes a request to be sent to a URL-proxy.  The proxy then extracts the original URL from the path of the rewritten URL, sends a request to the original host.  The invention thereby provides substantial advantages in tracking online activity by providing an easily deployed event tracking system that does not require different versions specific to browsers and operating systems and may capture transaction information across a plurality of web pages and/or web sites.

16.     Defendant is in the business of providing hotel and travel search and comparison through its website at www.Momondo.com, and supporting backend computer systems including, but not limited to, a web server and a database (collectively the "Accused Infrastructures").  Defendant practices a method of capturing information about the activity of users that use its search and comparison services, including to monetize searches (*e.g.* to implement a cost-per-click model with booking platforms, hoteliers, and other providers, and/or to otherwise monetize user information).

17.     The Accused Infrastructures provide a user browser with a web page containing a URL specifying both an address of a tracking system and information that specifies a URL on the web server.  For example, after a user performs a travel search, the Accused Infrastructures presents the user with search results consisting of offers or "deals" from participating third-party Web Servers.  Each offer is presented with a corresponding link encoded in a graphical button on a web page.  Each offer link contains a URL appended with additional information relating specifically to the offer provided by a third-party Web Server and a destination URL on the third-party Web Server.



18. The Accused Infrastructures further determine a web server URL from a web page request upon receipt of a tracking request from a user browser. For example, when the user inputs and sends search values to the Accused Infrastructures via the browser, the Accused Infrastructures receive the values and determines one or more search results comprising URLs to offers from third-party Web Servers based on the received values.

---

[3] https://www.momondo.com/hotel-search/Dallas,TX-c16406/2021-05-12/2021-05-19/2adults?sort=rank_a



<sup>4</sup>

19.     The Accused Infrastructures further identify, and extract captured information indicating that the user browser has requested the web server URL, the captured information stored within a database.  For example, captured information may comprise: (a) input values for pre-

---

<sup>4</sup> https://www.priceline.com/relax/at/47603/from/20210512/to/20210519/rooms/1?meta-id=QqJajm9tGwVrxYdM55hqHjY0kOyNA3mH7djWR3h6HsVi0y9bw2DQvGV4d0-AOj--SLnmppm47VQYoX-jn2GLaEOjdRadPZSWELQDMbNM8Pz4_iVhzzy44An3iMQZc9zpbf6WQfv8ZBd7vwGYpRejUfZ1Tbjm05yvKtYB8AEwmP2D1BZ1xhQQM-iqo7k9OxDKiClOfQ0LuDe73BLvtnedMyPaNNdYjXFBvyR1ZgVBHacTLhH611a4Nc6PYHo3HlFbE&pclnId=42B1BCD9183EE24744F5BDB53A4BB537D8BA70CA6212653591A9F2921455FE0701FC87F1D28B12D184D7E3B91E92F9B66DAC995CFCA88C52BD83CD96104E2858408E232E179DAC6F&gid=2837&cityId=3000021082&cur=USD&qdp=88&vrid=c1770b96be6a66630f04b700ff1c2066

8

selected categories and sub-categories, and/or (b) passive activity values resulting from browsing interactions internal or external to the Accused Infrastructures.

20.     The Accused Infrastructures further form parameter data based upon pre-determined selection parameters from the database.  For example, parameter data may comprise: (a) input values for pre-determined selection categories and sub-categories explicitly defined on the face of the webpage, and/or (b) pre-determined categories defined in a database not explicitly displayed to the user and corresponding to passive activity resulting from browsing interactions internal or external to the Accused Infrastructures.  On information and belief, Defendant receives user data and forms parameter values corresponding to pre-determined selections parameters defined in a database of the Accused Infrastructures, such as within a Momondo server and/or data center.[5]

21.     The Accused Infrastructures further encode an original URL as part of the tracking system URL path to construct at least one rewritten URL.  For example, instead of directing a user directly to the third-party Web Server, the Accused Infrastructures encode an original third-party Web Server URL corresponding to an offer from the third-party Web Server within a Momondo URL.  After the user exchanges data, via the browser, with the metasearch engine of the Accused Infrastructures, the Accused Infrastructures provides the user with search results consisting of offers or "deals" from participating third-party Web Servers.  Each offer is presented with a corresponding link encoded in a graphical button on a web page of the Accused Infrastructures.  The offer link contains a Momondo URL appended with additional information relating specifically to the offer provided by the third-party Web Server and the destination URL on the third-party Web Server.  The Web Server URL is provided based on the user activity on the

---

[5] *See* https://www.momondo.com/privacy

Momondo page, such as selection of the offer on the Momondo page. User selection of each link corresponding to a flight offer, or "deal," results in the execution of a Momondo URL which results in a Momondo-side redirect to an offeror's website.

22. The Accused Infrastructures further embed the rewritten URLs in the response such that a browser request to each of the rewritten URLs is sent to the tracking system. For example, the Accused Infrastructures append additional address information (corresponding to a Web Server offer URL) to a Momondo URL and places the rewritten URL within the response page presented to the Momondo user in the form of a user-selectable graphical image or button, such that selection of the user-selectable graphical image or button results in transmission of a request to the Accused Infrastructures.

23. The Accused Infrastructures further cause the web page specified by the web server URL to be returned to the User browser. For example, the Accused Infrastructures provide a web server URL specifying a web page of an offeror (*e.g.* booking service or hotelier) when a user selects a link corresponding to an "offer" or "deal."

24. The Accused Infrastructures further provide a profiling and analysis of at least one session. For example, the Accused Infrastructures capture and track information from browser sessions and use the information in site profiling and analysis of those sessions.

25. Plaintiff has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Asserted Patents. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

**COUNT I**
**(Infringement of the '416 Patent)**

26. Paragraphs 1 through 25 are incorporated herein by reference as if fully set forth in their entireties.

27. Plaintiff has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '416 Patent.

28. Defendant has directly infringed and continues to directly infringe the '416 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '416 Patent. Upon information and belief, these products include the Accused Infrastructures that practice the methods and systems covered by the '416 Patent including, for example, travel metasearch functionality implemented at the Accused Infrastructures associated with www.Momondo.com. These infrastructures infringe at least claim 1 of the '416 Patent.

29. Defendant has and continues to directly infringe at least claim 1 of the '416 Patent by making, using, offering to sell, selling, and/or importing into the United States infrastructures that implement a method of capturing on a computer programmed digital electrical tracking system information about activity of a user browser accessing a Web server, the method comprising: providing the user browser with a Web page containing a URL specifying both an address of the tracking system and information that specifies a URL on the Web server; upon receipt by the tracking system of a Web page request from the user browser, determining a Web server URL from the Web page request; identifying and extracting captured information indicating that the user browser has requested the Web server URL, the captured information being stored within a database; forming parameter data based upon pre-determined selection parameters from the database; encoding an original URL as part of the tracking system URL path to construct at least one rewritten URL; embedding the rewritten URLs in the response, such that a browser request to

each of the rewritten embedded URLs is sent to the tracking system; and causing the Web page specified by the Web server URL to be returned to the user browser.

30. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '416 Patent by knowingly and intentionally inducing others, including end users and service providers of the Accused Infrastructures, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology such as the Accused Infrastructures that practices the systems and methods covered by the '416 Patent.

31. Defendant, with knowledge that these products, or the use thereof, infringe the '416 Patent knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '416 Patent by providing these Accused Infrastructures to end users and/or service providers for use in an infringing manner.

32. Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '416 Patent, while remaining willfully blind to the infringement.

33. Plaintiff has suffered damages as a result of Defendant's direct and indirect infringement of the '416 Patent in an amount to be proved at trial.

34. Plaintiff has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '416 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '946 Patent)

35. Paragraphs 1 through 25 are incorporated herein by reference as if fully set forth in their entireties.

36. Plaintiff has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '946 Patent.

37. Defendant has directly infringed and continues to directly infringe the '946 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '946 Patent. Upon information and belief, these products include the Accused Infrastructures that practice the methods and systems covered by the '946 Patent, including, for example, travel metasearch functionality implemented at the Accused Infrastructures. These infrastructures infringe at least claim 1 of the '946 Patent.

38. Defendant has and continues to directly infringe at least claim 1 of the '946 Patent by making, using, offering to sell, selling, and/or importing into the United States infrastructures that comprise a computer programmed digital electrical tracking system apparatus connected to a user browser and a Web server on the Internet, the apparatus adapted to: provide the user browser with a Web page containing a URL specifying both an address of the tracking system and information that specifies a URL on the Web server; upon receipt by the tracking system of a Web page request from the user browser, determine a Web server URL from the Web page request; identify and extract captured information indicating that the user browser has requested the Web server URL, the captured information stored within one or more databases; form parameter data based upon pre-determined selection parameters from the one or more databases; encode an

original URL as part of the tracking system's URL path to construct at least one rewritten URL; embed the rewritten URLs in a response such that a browser request to each of the rewritten embedded URLs is sent to the tracking system; and cause the Web page specified by the Web server URL to be returned to the user browser; and provide profiling and analysis of at least one session.

39. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '946 Patent by knowingly and intentionally inducing others, including end users and service providers of the Accused Infrastructures, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Infrastructure that practice the systems and methods covered by the '946 Patent.

40. Defendant, with knowledge that these products, or the use thereof, infringe the '946 Patent knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '946 Patent by providing these Accused Infrastructure to end users and/or service providers for use in an infringing manner.

41. Defendant induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '946 Patent, while remaining willfully blind to the infringement.

42. Plaintiff has suffered damages as a result of Defendant's direct and indirect infringement of the '946 Patent in an amount to be proved at trial.

43. Plaintiff has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '946 Patent for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each Asserted Patent;

b. Entry of judgment declaring that Defendant's infringement of the Asserted Patents is willful;

c. An order awarding damages sufficient to compensate Network Monitoring for Defendant's infringement of the Asserted Patents, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d. Enhanced damages pursuant to 35 U.S.C. § 284;

e. Entry of judgment declaring that this case is exceptional and awarding Network Monitoring its costs and reasonable attorney fees under 35 U.S.C. § 285;

f. An accounting for acts of infringement;

g. Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

h. Such other and further relief as the Court deems just and proper.

Dated: April 29, 2021

Respectfully submitted,

/s/ *Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Road, Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796
Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

***ATTORNEYS FOR PLAINTIFF***
***NETWORK MONITORING LLC***